b

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

ANDRICA SEWELL,
Appellant

CIVIL DOCKET NO. 1:19-CV-01286

**VERSUS**

DISTRICT JUDGE DRELL

COMMISSIONER OF SOCIAL
SECURITY,
Appellee

MAGISTRATE JUDGE PEREZ-MONTES

---

## REPORT AND RECOMMENDATION

Andrica Sewell ("Sewell") appeals the denial of her claims for social security benefits. Because the ALJ fully and fairly developed the administrative record, and the additional records submitted by Sewell are not relevant, Sewell's appeal should be DENIED.

## I.    Background.

### A.    Procedural Background

Sewell filed applications for disability insurance benefits ("DIB") and supplemental security income benefits (SSI") on September 10 and 26, 2014, alleging a disability onset date of June 5, 2013. ECF No. 11-1 at 129, 133. Sewell contends she is disabled due to depression, high blood pressure, back problems, and leg problems. ECF NO. 11-1 at 153. Those claims were initially denied by the Social Security Administration ("SSA"). ECF No. 11-1 at 65.

A *de novo* hearing was held before an Administrative Law Judge ("ALJ") on September 11, 2018, at which Sewell appeared. ECF No. 11-1 at 33. The ALJ

found that Sewell met the insured status requirements for DIB through March 31, 2018, and had not engaged in substantial gainful activity since June 5, 2013. ECF No. 11-1 at 33. The ALJ further found that Sewell has a severe "knee impairment" (ECF No. 11-1 at 33), and is a younger individual with a high school education, who has the residual functional capacity to perform the full range of sedentary work. ECF No. 11-1 at 23, 27. Because the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.28 directed a conclusion of not disabled (ECF No. 11-1 at 27), the ALJ concluded that Sewell was not under a disability, as defined in the Social Security Act, at any time from June 5, 2013 through the date of his decision on February 5, 2019. ECF No. 11-1 at 28.

Sewell requested a review of the ALJ's decision, but the Appeals Council declined to review it. ECF No. 11-1 at 4. The ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Sewell next filed an appeal for judicial review of the ALJ's decision. Sewell contends the ALJ failed to obtain and consider Sewell's mental health records, which she contends had been mailed to the wrong address. ECF No. 15. Sewell also submitted additional medical records to the Court. ECF No. 20. The Government opposes Sewell's appeal. ECF No. 16.

### B.  Medical Records

In June 2014, Sewell complained of hypertension and swelling in her ankles, as well as chest pain. ECF No. 11-1 at 210, 213. Sewell's blood pressure was

171/113.  ECF No. 11-1 at 214.  X-rays of Sewell's chest showed her heart was normal in size and her lungs were clear.  ECF No. 11-1 at 210.  Sewell was diagnosed with uncontrolled hypertension and costochondritis.[1]  ECF NO. 11-1 at 219.  Sewell's medication was increased, she was instructed to monitor her blood pressure, and she was placed on a low salt diet.  ECF NO. 11-1 at 215, 218.

In July 2014, Sewell's lab work showed she had high cholesterol.  ECF No. 11-1 at 207.  Sewell was instructed to lose weight.  ECF. No. 11-1 at 217.

In October 2014, Sewell had swelling in her lower extremities with pain.  ECF No. 11-1 at 209.  A lower extremity venous ultrasound showed no deep vein thrombosis.  ECF No. 11-1 at 209, 212, 288.

In February 2015, Sewell was evaluated for back and leg pain by Dr. Justin Owens at the Southern Medical Group, at the request of Disability Determinations Services.  ECF No. 11-1 at 221.  Sewell explained she has had back pain since being hit by a car while riding her bicycle when she was 14 years old.  ECF No. 11-1 at 221.  As a result of the accident, Sewell had two surgeries on her left knee.  ECF No. 11-1 at 221.

Sewell's pain extends from her back to her feet, and she has pain (numbness, tingling, and shooting pain) in her legs after walking, sitting, or standing more than

---

[1] Inflammation of the cartilage connecting the ribs to the breastbone.  *See* MedlinePlus Medical Encyclopedia: Costochondritis, available at *https://medlineplus.gov/ency/article/000164.htm* (U.S. National Library of Medicine and the National Institutes of Health).

a few minutes. ECF No. 11-1 at 221. Sewell was taking Paxil, Norvasc, and Lisinopril. ECF No. 11-1 at 221. Sewell reported being independent with her activities of daily living, but said she needs to use an assistive device two to three times per week when she has difficulty walking due to pain. ECF No. 11-1 at 221.

Dr. Owens did a mental status exam and found Sewell was alert, oriented, cooperative, did not appear depressed or anxious, was able to communicate, and had good memory, insight, and cognitive function. ECF No. 11-1 at 222. Sewell did not report mood changes, depression, nervousness, anxiety, or difficulty concentrating or sleeping at night. ECF No. 11-1 at 222.

Dr. Owens also found that Sewell had a normal gait, was able to rise from a seated position without assistance, could stand/walk on tiptoes and heels, and tandem walk without problems, but was unable to bend and squat through the full range of motion due to reported pain. ECF No. 11-1 at 222. Sewell had edema in both legs extending to the thighs. ECF No. 11-1 at 222. Sewell had normal strength in all muscle groups. ECF No. 11-1 at 222. X-rays of Sewell's lumbosacral spine were normal. ECF No. 11-1 at 223. X-rays of Sewell's left and right knee were showed no fracture, dislocation, effusion, or significant degenerative changes. ECF No. 11-1 at 223. Sewell was diagnosed with lumbago and arthralgia. ECF No. 11-1 at 223. Dr. Owens concluded that Sewell can: sit, walk and/or stand for a full work-day (with normal breaks for repositioning); lift/carry objects without

4

limitations; hold a conversation; respond appropriately to questions; and carry out and remember instructions.  ECF No. 11-1 at 223.

In March 2015, Dr. Lynette Causey, Ph.D., found there was no evidence in the administrative file to show that Swell had any problems with any mental conditions.  ECF No. 11-1 at 51.

Also in March 2015, Dr. Mark Walker filled out a physical residual functional capacity assessment for Sewell from a review of her medical records.  ECF No. 11-1 at 52.  Dr. Walker found that Sewell has exertional limitations: she can only occasionally lift/carry/upwardly pull 50 pounds, can frequently lift/carry 25 pounds, can stand/walk up to six hours in an eight-hour day; and can sit up to six hours in an eight-hour day.  ECF No. 11-1 at 62.

In September 2015, Sewell (38 years old) reported persistent moderate left shoulder pain for three weeks after "throwing an object."  ECF No. 11-1 at 513, 525.  Sewell's sensation, motor function, and tendon function were normal, and she had no vascular compromise or fracture.  ECF No. 11-1 at 513-14.  X-rays showed no acute findings.  ECF No. 11-1 at 525.  Sewell was diagnosed with a possible rotator cuff tear and prescribed Ultram.  ECF No. 11-1 at 514-15.  Two weeks later, Sewell was evaluated for chest pain and shortness of breath.  ECF No. 11-1 at 277.  Her blood pressure was 154/105.  ECF No. 11-1 at 278.  X-rays of Sewell's chest showed no abnormalities.  ECF No. 11-1 at 281. Sewell was alert and oriented.  ECF No. 11-1 at 279.  Atypical chest pain was diagnosed.  ECF No. 11-1 at 282.

In October 2015, Sewell was treated for sinusitis.  ECF No. 110-1 at 273, 275. Her blood pressure was 158/92.  ECF No. 11-1 at 274.  At that time, she was alert and oriented.  ECF No. 11-1 at 275.

In May 2016, Sewell (39 years old) was evaluated for chest pain and shortness of breath.  ECF No. 11-1 at 261.  Sewell was hypertensive (BP 159/85) and admitted she had not been compliant with her medication.  ECF No. 11-1 at 261.  X-rays of her chest showed no acute findings.  ECF No. 11-1 at 265, 267, 497. A week later, Sewell again reported chest pain, shortness of breath, and anxiety. ECF No. 11-1 at 495, 498.  Her blood pressure was 125/73.  ECF No. 11-1 at 499.  X-rays of her chest again showed no acute cardiopulmonary process.  ECF No. 11-1 at 510.  A CT scan was negative for pulmonary emboli.  ECF No. 11-1 at 511.  She was diagnosed with musculoskeletal chest pain and prescribed lorazepam (for anxiety), hydrochlorothiazide (a diuretic), and amlodipine besylate (for hypertension).  ECF No. 11-1 at 500.

In June 2016, Sewell reported to the emergency department for a refill of her anxiety medication, Ativan.  ECF NO. 11-1 at  256.  Sewell's blood pressure was 140/86.  ECF No. 11-1 at 258.  Sewell had a normal affect, mood, and cognitive function.  ECF No. 11-1 at 258.  She was diagnosed with chronic pain and a history of anxiety, and her medications (amlodipine, hydrochlorothiazide, metoprolol tartrate) were refilled.  ECF NO. 11-1 at 259.

Two days later, Sewell returned, complaining of moderate numbness and weakness in her extremities, accompanied by shortness of breath. ECF No. 11-1 at 247-48. Sewell's blood pressure was 143/102. ECF NO. 11-1 at 249. Sewell had a normal ECG. ECF NO. 11-1 at 252. Sewell's affect and mood were normal. ECF No. 11-1 at 251. Sewell was advised to seek treatment for anxiety. ECF No. 11-1 at 254.

In September 2016, Sewell was treated for moderate aching. ECF NO. 11-1 at 242. Chest x-rays were unremarkable. ECF No. 11-1 at 286-87. Sewell was diagnosed with bronchitis and right shoulder pain. ECF No. 11-1 at 245.

In November 2016, Sewell reported "choking" and coughing until she throws up, for the previous eight months. ECF No. 11-1 at 352. Sewell weighed 276 pounds and her blood pressure was 136/70. ECF No 11-1 at 354. Sewell was again diagnosed with bronchitis. ECF No. 11-1 at 355.

In December 2016, had a follow-up appointment. ECF No. 11-1 at 344. Sewell was 40 years old, weighed 280 pounds, and her blood pressure was 154/89. ECF No. 11-1 at 344, 346. Sewell was diagnosed with an acute upper respiratory infection. ECF No. 11-1 at 347. She was also diagnosed with iron-deficiency anemia. ECF No. 11-1 at 350, 464. Sewell's mental status exam was normal. ECF No. 11-1 at 347.

In early February 2017, Sewell had an abscessed tooth. ECF No. 11-1 at 475. Sewell was given pain medication, antibiotics, and a follow-up appointment. ECF

No. 11-1 at 476.  Later in February 2017, Sewell reported tenderness and swelling in her face (left jaw) for 4 days.  ECF No. 11-1 at 446, 452.  Sewell thought maybe her lip was cut during a recent colonoscopy.  ECF No. 11-1 at 446.  Sewell was smoking less than one pack per day.  ECF No. 11-1 at 446.  Sewell was diagnosed with a submandibular abscess.  ECF No. 11-1 at 447.  She was given antibiotics and pain medication.  ECF No. 11-1 at 451.

In March 2017, Sewell complained that she coughed "all the time" and albuterol was not helping.  ECF No. 11-1 at 336.  She weighed 288 pounds and her blood pressure was 130/76.  ECF No. 11-1 at 336.  Sewell's mental status exam was normal.  ECF No. 11-1 at 339.  Sewell reported that she coughs until she throws up, and she smokes 2 to 3 cigarettes per day.  ECF No. 11-1 at 338.  She was referred for spirometry tests.  ECF No. 11-1 at 339.

In June 2017, Sewell was evaluated for multiple complaints including anemia.  ECF No. 11-1 at 331.  Sewell weighed 287 pounds and her blood pressure was 154/90.  ECF No. 11-1 at 331.  Her psychiatric exam was normal.  ECF NO. 11-1 at 334.  Her medications were continued.  ECF NO. 1101 at 334.

In August 2017, Sewell was evaluated for chronic pain in her left shoulder.  ECF No. 11-1 at 426.  Her sensation and motor were normal.  ECF No. 11-1 at 427.  X-rays of her left shoulder were normal.  ECF No. 11-1 at 427.  There was no fracture or dislocation.  ECF No. 11-1 at 435.  Sewell was diagnosed with internal

derangement of her left shoulder and prescribed Relafen.  ECF No. 11-1 at 428, 430, 433.

Also in August 2017, Sewell went to the emergency room because she coughed, became short of breath, and choked on a meatball.  ECF No. 11-1 at 436, 439.  Chest x-rays showed no evidence of acute cardiopulmonary disease.  ECF No. 11-1 at 445.

In September 2017, Sewell was seen for a hypertension follow-up.  ECF NO. 11-1 at 326.  Sewell weighed 288 pounds and her blood pressure was 128/68.  ECF No. 11-1 at 326.  Sewell admitted she used "weed."  ECF No. 11-1 at 328.  Her medications were continued.  ECF No. 11-1 at 329.

In December 2017, Sewell was seen for complaints of a cough, fatigue, and weakness.  ECF No. 11-1 at 321.  Sewell weighed 278 pounds and her blood pressure was 143/83.  ECF No. 11-1 at 321.  Sewell was diagnosed with anemia, hypertension, asthma, left shoulder pain, postnasal drip, gastroesophageal reflux disease ("GERD"), upper respiratory infection, and an ear infection.  ECF No. 11-1 at 324-25.  Chest x-rays showed no acute cardiopulmonary process.  ECF No. 11-1 at 383.

In February 2018, Sewell (then 41 years old) was treated in the emergency room for chest pain.  ECF No. 11-1 at 233.  Sewell reported her chest pain was mild, did not radiate, felt heavy, and was accompanied by dizziness, numbness/tingling, and shortness of breath.  ECF No. 11-1 at 233.  Sewell's blood pressure was 151/89.

ECF No. 11-1 at 235, 239.  Chest x-rays showed no significant abnormality.  ECF No. 11-1 at 284-85.  Sewell was diagnosed with atypical chest pain.  ECF No. 11-1 at 240.

In March 2018, Sewell complained of left shoulder pain (progressively worsened since 2015) and bilateral leg pain.  ECF No. 11-1 at 312.  Sewell was 5'2" tall, weighed 275 pounds, and her blood pressure was 156/93.  ECF No. 11-1 at 312.  Sewell had right knee crepitus.  ECF No. 11-1 at 315.  Sewell was diagnosed with essential hypertension, anxiety, right knee pain, upper respiratory infection, and onychomycosis (fungal infection of the nails).  ECF No. 11-1 at 315-16.  She was given an orthopedic referral.  ECF No. 11-1 at 315.

In June 2018, Sewell was 5'2" tall, weighed 274 pounds, and her blood pressure was 123/70.  She complained of lower extremity pain and a swollen right thigh.  ECF No. 11-1 at 308.  Sewell was diagnosed with morbid obesity, right leg pain, and low back pain.  ECF No. 11-1 at 308-09.  X-rays of her lumbosacral junction and lumbar spine were unremarkable, and her right femur was normal.  ECF No. 11-1 at 364-66.

In March 2018, x-rays of Sewell's right knee showed mild medial joint space narrowing without osteophyte formation, but were otherwise normal.  ECF No. 11-1 at 369.

In July 2018, Sewell was evaluated for her hypertensive disorder and anxiety.  ECF No. 11-1 at 299.  She was 41 years old, 5'2" tall, weighted 279 pounds,

and her blood pressure was 144/88.  ECF No. 11-1 at 299.302.  Sewell's neurological exam was normal.  ECF No 11-1 at 302.  Her feet did not show signs of diabetes.  ECF No. 11-1 at 303.  She was alert and oriented, and her affect, memory, judgment and insight were normal.  ECF NO. 11-1 at 302.  Sewell was diagnosed with: hypertensive disorder (prescribed amlodipine, Cozaar, and hydrochlorothiazide); anxiety disorder; asthma (prescribed Anoro Ellipta for her inhaler); left shoulder pain (prescribed cyclobenzaprine); right knee pain (prescribed gabapentin); posterior rhinorrhea (prescribed montelukast); GERD (prescribed omeprazole); depressive disorder (prescribed fluoxetine); and persistent insomnia (prescribed doxepin).  ECF No. 11-1 at 303.

### C.  Administrative Hearing

Sewell appeared unrepresented at her September 2018 administrative hearing.  ECF No. 11-1 at 33.  Sewell objected that the administrative file had not been updated, although she had signed medical records release forms.  ECF No. 11-1 at 35-36.  The ALJ told Sewell it was her fault the records were not updated.  ECF No. 1101 at 35-36.  Sewell then testified that, since 2014, she has received care at the emergency room, from her primary care doctor-Dr. Kimberly Sumbler, from Caring Choices[2] (for anxiety and mental health), and has been treated for depression, gout, carpal tunnel syndrome, and back problems.  ECF No. 11-1 at 37.

---

[2] Caring Choices is consistently misspelled by the hearing transcriptionist as "Karen Choices."

Sewell testified that she takes medication for both anxiety and depression. ECF No. 11-1 at 42.  Sewell testified that her mail had been going to her daughter's address and she had not received it.  ECF No. 11-1 at 42.  However, Sewell also testified that she received the "booklet" sent to her by the SSA before the hearing; filled it out with all of her diagnoses, medications, and healthcare providers; and sent it back.  ECF No. 11-1 at 42.  Sewell said she has medical records at Rapides Regional, Cabrini, Encore Network, and Caring Choices.  ECF NO. 11-1 at 42.

Sewell testified that she was 41 years old, 5'2" tall, weighed 263 pounds, and was separated from her husband.  ECF No. 11-1 at 38.  Sewell testified that she is able to drive and has a GED.  ECF No. 11-1 at 38.  Sewell testified that she is currently working three days per week, 2 hours per day, delivering newspapers. ECF No. 11-1 at 38.  Sewell testified that she makes an average of $85 per week. ECF No. 11-1 at 39.

Sewell testified that, in the last 15 years, she has worked as a CNA at a nursing home, and delivering newspapers.  ECF No. 11-1 at 39.

Sewell testified that she takes Gabapentin, but she told her doctor it does not work.  ECF No. 11-1 at 39-40.  Sewell said she needs an MRI, but Medicaid will not pay for it.  ECF NO. 11-1 at 40.

Sewell testified that she can walk about ten minutes, and can stand about five minutes, before her legs or back give out.  ECF No. 11-1 at 40.  Sewell can sit

about 20 minutes before her back or legs start to bother her or cramp up.  ECF No. 11-1 at 40-41.  Sewell can lift about 25 pounds.  ECF No. 11-1 at 41.

Sewell testified that she is receiving mental health treatment at Caring Choices.  ECF No. 11-1 at 41.  She sees her doctor once a month and her counselor once a month.  ECF No. 11-1 at 41.  Sewell testified that she does not have memory problems.  ECF No. 11-1 at 41.

Sewell testified that she does not watch television often, but she is able to follow the story line when she does watch it.  ECF No. 11-1 at 41.  Sewell testified that she has problems with crowds and strangers due to anxiety, and can only tolerate one person at a time.  ECF No. 11-1 at 42.

Sewell testified that she does not do laundry (her daughter does it), but can shop.  ECF No. 11-1 at 42.

### D.    ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a).  The sequential process required the ALJ to determine whether Sewell: (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in

the five-step review is conclusive and terminates the analysis. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 514 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. *See Greenspan*, 38 F.3d at 237.

In the case at bar, the ALJ found that Sewell has not engaged in substantial gainful activity since June 5, 2013. ECF No. 11-1 at 19. The ALJ found that Sewell has a severe impairment of "knee impairment." ECF No. 7-1 at 20. The ALJ also found that Sewell is unable to perform her past relevant work, and further stated he was unable to determine whether Sewell had earned above substantial gainful activity performing her newspaper delivery work.[3] ECF No. 7-1 at 11.

At Step No. 5 of the sequential process, the ALJ found that Sewell has the residual functional capacity to perform the full range of sedentary work. ECF No. 11-1 at 27. The ALJ concluded that, because Sewell was a younger individual with at least a high school education, Rule 201.28 of Appendix II (the Medical-Vocational

---

[3] Because Sewell testified that she was making less than $700 per month, her job delivering newspapers does not appear to qualify as "substantial gainful activity." See 20 C.F.R. § 404.1574.

14

Guidelines) directed a finding of "not disabled" at any time through the date of the

ALJ's decision on February 5, 2019.  ECF No. 11-1 at 28.

## II.    Law and Analysis.

### A.    Scope of Review

In considering Social Security appeals, a court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. *See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance.  *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.  *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder.  *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir. 1983).  The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court.  *See Allen v. Schweiker,* 642

F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). A court does have authority, however, to set aside factual findings that are not supported by substantial evidence, and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

**B.     The ALJ fully and fairly developed the administrative record.**

Sewell contends the ALJ erred in failing to obtain the additional medication records she informed him about.

When the ALJ found that Sewell could not return to her past relevant work, the burden shifted to the Commissioner to show that Sewell can perform other work in the national economy. *See Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Commissioner can meet that burden if she can prove that Sewell's residual functional capacity, age, education and previous work experience match those set out in any "Rule" of the Medical-Vocational Guidelines found in 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the grids"), of the Rule directs a conclusion that the claimant is not disabled. Sec. 200.00(a) of Appendix 2 states this as follows:

> Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled.

The U.S. Supreme Court has upheld the use of these Guidelines by the Commissioner in lieu of calling a vocational expert to testify. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *see also Harrell v. Bowen*, 862 F.2d 471, 478 (5th Cir. 1988).

In this case, the ALJ found that Sewell has the residual functional capacity to perform the full range of sedentary work and, therefore, meets Rule 201.28 of Appendix II, which directs a finding of "not disabled."

However, Sewell contends the ALJ did not fully and fairly develop the record with regard to obtaining her missing medical records.

The ALJ has a duty to develop the facts fully and fairly relative to an applicant's claim for disability benefits. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). "The ALJ's obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with the hearing procedure appears before him. This duty requires the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1219-20 (5th Cir. 1984); *see also Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991); *James v. Bowen*, 793 F.2d 702, 704 (5th Cir. 1981). If the ALJ does not satisfy his duty, his decision is not substantially justified. Reversal of his decision, however, is appropriate only if the

17

applicant shows that she was prejudiced.  *See Ripley*, 67 F.3d at 557; *Kane*, 731 F.2d at 1219-20.

The ALJ stated in his findings that, despite Sewell's late request and because she was unrepresented, he made a post-hearing request for additional medical and mental health records from the sources Sewell identified at the hearing.  ECF No. 11-1 at 17.  The records that were obtained were made part of the administrative record (ECF No. 11-1 at 31-32) and the ALJ considered them in making his decision.  ECF No. 11-1 at 17.

Therefore, Sewell's claim that the ALJ ignored her request that her medical records be "updated" is incorrect.  The ALJ fulfilled his duty to fully and fairly develop the administrative record.

Substantial evidence supports the ALJ's/Commissioner's finding that Sewell is not disabled.

**C.    The new evidence submitted to the Court by Sewell is not relevant.**

Sewell submitted new mental health records to the Court, contending the ALJ had not considered them.  ECF No. 20.  Although requested after the hearing, no additional mental health records were received.  ECF No. 11-1 at 32.

The Court's jurisdiction in this Social Security case is a wholly appellate review on the administrative record.  Therefore, Social Security plaintiffs are denied the opportunity to present new evidence to a reviewing court outside the context of

a request to remand. *See Ellis v. Bowen*, 820 F.2d 682, 684 (5th Cir. 1987); 42 U.S.C. § 405(g).

The pertinent part of 42 U.S.C. § 405(g) which authorizes this Court to remand a Social Security case to the Commissioner, states:

> "The court . . . may at any time order additional evidence to be taken before the Commissioner, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . ."

In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *See Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987). A remand to the Commissioner is not justified if there is no reasonable possibility that it would have changed the outcome of the Commissioner determination.

Evidence is "new" if it is not cumulative and adds to the evidence already existing in the case. *See Bradley*, 809 F.2d at 1058. "Materiality" is composed of two strands, relevance and probativeness. *See Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981). To be relevant, the new evidence must relate to the time period for which benefits were denied and cannot concern evidence of a later acquired disability or subsequent deterioration of a previously non-disabling condition. *See Bradley*, 809 F.2d at 1058; *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985). It is implicit in the materiality requirement that the new evidence relate to the time

period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (citing *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989)).

However, the subsequent deterioration of a claimant's previously non-disabling condition, after the date of the Commissioner's decision, may form the basis of a new claim. *See Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985); *see also, Sanchez v. Barnhart,* 75 Fed. Appx. 268, 270 (5th Cir. 2003) *(citing Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

The new mental health records submitted by Sewell are dated May 31, 2019 (ECF No. 20 at 8) and February 14, 2020 (ECF No. 20 at 1).amecu.org  The May 2019 records from Caring Choices outline a 6-month treatment plan for Sewell to deal with her panic disorder, alcohol dependence, cannabis dependence, hallucinogen abuse, and post-traumatic stress disorder.  ECF No. 20 at 8.  The February 2020 record outlines a new 6-month treatment plan for Sewell, by Caring Choices, to deal with her panic disorder, alcohol dependence, cannabis dependence, hallucinogen abuse, post-traumatic stress disorder, and major depressive disorder.[4] ECF No. 20 at 1.

---

[4] It is noted that Section 105 of the Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847, 852-55 (1996), amended pertinent portions of the Social Security Act to prohibit the award of DIB and SSI to individuals disabled by alcoholism or drug addiction.  See 42 U.S.C. §§ 423(d)(2)(C), 1382(c)(3)(J).  Under the amended regulations, the key factor the Commissioner must examine in determining whether drugs

Those records post-date the relevant time frame at issue, which ended on February 5, 2019. They do not appear to be the continuation of mental health care that was initiated at an earlier period, but instead outline new treatment plans that began on May 31, 2019 and on February 14, 2020. *Compare Falco*, 27 F.3d at 164.

Because the new medical records submitted by Sewell are not relevant to the time period at issue, a remand to the Commissioner for consideration of those records is not warranted.

## III.  Conclusion

Based on the foregoing, IT IS RECOMMENDED that Sewell's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor

---

or alcohol are a contributing factor to the claim is whether the Commissioner would still find claimant disabled if she stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). *See also Fitch v. Colvin,* 653 Fed. Appx. 345, 348 (5th Cir. 2016) (citing *Brown v. Apfel*, 192 F.3d 492, 498-499 (5th Cir. 1999)).

encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana on this __27th__ day of January 2022.

Joseph H.L. Perez-Montes
United States Magistrate Judge

22